UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **JOHNNY LEE O'NEAL** | **CIVIL ACTION NO. 18-702-P** |
| **VERSUS** | **JUDGE FOOTE** |
| **WARDEN VANNOY** | **MAGISTRATE JUDGE HORNSBY** |

### REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

### STATEMENT OF CLAIM

Before the court is a petition for writ of habeas corpus filed by pro se petitioner Johnny Lee O'Neal ("Petitioner"), pursuant to 28 U.S.C. §2254. This petition was received and filed in this court on May 25, 2018. Petitioner is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. He challenges his state court conviction and sentence. He names Warden Vannoy as respondent.

On April 25, 2007, Petitioner was convicted of one count of second degree murder in the Louisiana First Judicial District Court, Parish of Caddo. Subsequently, he was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Petitioner's conviction and sentence were affirmed on appeal. State v. O'Neal, 43,055 (La. App. 2 Cir. 2/13/08), 976 So.2d 297.

In support of this petition, Petitioner alleges (1) the evidence was insufficient; (2) he received ineffective assistance of counsel; (3) the State failed to prove specific intent to kill; (4) discrimination during jury selection; and (5) his sentence is excessive.

The documentation submitted by Petitioner demonstrates that his claims were not properly exhausted through the appropriate state courts. Plaintiff admits his writ of review from his direct appeal was denied by the Supreme Court of Louisiana as untimely. Also, the documentation submitted by Petitioner includes a copy of an opinion from the Supreme Court of Louisiana which shows his post-conviction relief claims were denied as untimely and for failure to carry his burden to show that an exception applies. State Ex Rel. O'Neal v. State, 2017-361, 242 So.3d 562 (La. 4/27/18).

On September 20, 2018, Petitioner was ordered to demonstrate cause for his failure to present his claims to the appropriate state courts and actual prejudice as a result of the alleged assignment of errors or to demonstrate that this court's failure to consider his claims will result in a fundamental miscarriage of justice [Doc. 9]. Petitioner filed a response in which he argues his claims are based on newly discovered evidence. He claims he discovered new evidence of a systematic discriminatory practice in Caddo Parish by the District Attorney against African American jurors when the defendant was African American. He claims the discriminatory practice was proven by Ursula Noye of Reprieve Australia and his case was used to prove the illegal practices. He claims he received this newly discovered evidence from the McArthur Center in May of 2016. Petitioner also argues that he defaulted his claim because of ineffective assistance of counsel. He claims

his court appointed attorney Mark Foster abandoned him before his case ended. He claims Foster moved to Georgia and failed to notify him [Doc. 10].

Petitioner argues in his memorandum in support of his petition that his claims are based on facts not known to him. He argues the evidence in support of his claims was not available to him until August 18, 2015 when he discovered an article in the Shreveport Times entitled "EXCLUSION OF BLACKS FROM JURIES RAISES RENEWED SCRUTINY." He claims he learned that prosecutors used a color coded method of excluding jurors based on race to secure a limited number of African Americans for jury duty. He claims these facts were unknown to him and his court appointed attorney [Doc. 5, pp.22, 23].

Petitioner claims that in May of 2016, he received a letter the MacArthur Justice Center which informed him that his criminal case had been used by Reprieve Australia as part of a Blackstrike study. Blackstrike is the study of African American jurors serving on the trials of African Americans discriminated against by the Caddo Parish District Attorney's Office. Petitioner claims he read about the discriminatory practices in the Shreveport Times on August 18, 2015 and received the official notice in May of 2016. Petitioner admits he raised the alleged discriminatory practice during his trial when he asked why all the black men were being removed from the jury. He claims he timely made his objection before the jury was seated [Doc. 5, p. 37].

Petitioner also argues that on December 3, 2014 he mailed a letter to his appellate attorney. He claims that letter was returned to him unopened on December 8, 2014. He

claims that on April 13, 2015, he sent another letter to his appellate attorney at a different address. He claims that letter was returned unopened on April 27, 2015. Plaintiff claims that he then contacted the Office of Disciplinary Counsel and on October 29, 2015, they provided him with a Georgia address for his appellate counsel. He claims that on November 11, 2015 his appellate counsel notified him that he had moved to Georgia. Plaintiff claims that neither his attorney nor the Louisiana Second Circuit Court of Appeals notified him of the status of his case, and he was therefore barred from filing a writ of review in the Supreme Court of Louisiana [Doc.5, p. 23].

For the reasons stated below, Petitioner's complaint should be dismissed.

## LAW AND ANALYSIS

Habeas corpus relief is available to a person who is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. However, the right to pursue habeas relief in federal court is not unqualified. It is well settled that a petitioner seeking federal habeas corpus relief cannot collaterally attack his state court conviction in federal court until he has exhausted all available state remedies. Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); Minor v. Lucas, 697 F.2d 697 (5th Cir. 1983).

This requirement is not a jurisdictional bar but a procedural one erected in the interest of comity providing state courts first opportunity to pass upon and correct alleged constitutional violations. Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct.509, 30L.Ed.2d 438, 443 (1971); Rose v. Lundy, supra. When, however, state remedies are rendered

unavailable by the petitioner's own procedural default, federal courts are barred from reviewing those claims. Sones v. Hargett, 61 F.3d 410 (5th Cir. 1995). Assuming the state procedural bar operates as an independent and adequate state ground, the procedural default doctrine applies, and federal review is barred unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Sones v. Hargett, 61 F.3d at 418, citing Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).

In procedural default cases, the cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's [or petitioner's] efforts to develop the "factual or legal basis of the claim." Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). Objective factors that constitute cause include "interference by officials" that makes compliance with the state procedural rule impracticable and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." Id.

The Supreme Court has long held that comity concerns dictate that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims. Coleman, 501 U.S. at 731; Rose v. Lundy, 455 U.S. 509,518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982). Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state

courts of an opportunity to address those claims in the first instance. The independent and adequate state ground doctrine ensures that the State's interest in correcting their own mistakes is respected in all federal habeas cases. In the absence of the independent and adequate state ground doctrine, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. Id. While subject to rebuttal by the petitioner, the procedural default doctrine presumes that the "state court's [express] reliance on a procedural bar functions as an independent and adequate ground in support of the judgment." Sones, 61 F.3d at 416.

Petitioner argues his claims are not procedurally barred because they are based on newly discovered evidence. Petitioner has failed to show his claims are based on newly discovered evidence. Petitioner admits he raised the alleged discriminatory practice during his trial when he asked why all the black men were being removed from the jury. He claims he timely made his objection before the jury was seated [Doc. 5, p. 37]. Petitioner has failed to allege any new evidence which actually exists proving his innocence was denied him.

Petitioner next argues that his claims are not procedurally barred because his court appointed attorney Mark Foster abandoned his case before it was final when he moved without notifying him. Mark Foster of the Louisiana Appellate Project was appointed to file a direct appeal for Petitioner which he did. Petitioner claims neither his court appointed attorney, or the Louisiana Second Circuit Court of Appeals notified him of the status of his case, and this prevented him from filing a writ of review to the Supreme Court of Louisiana.

Petitioner does not claim he attempted to contact his attorney or the court before December of 2014, which was more than six years after the Louisiana Second Circuit Court of Appeals ruled on his case. Petitioner knew he was unable to contact his attorney in December of 2014 when his letter to him was returned unopened. Furthermore, Petitioner claims that he did not know of the alleged new evidence until August of 2015. Thus, prior to the discovery of the alleged new evidence, Petitioner knew that he was unable to contact his appellate counsel. Furthermore, Petitioner was not entitled to assistance of counsel beyond the initial appellate level. See Ross v. Moffitt, 417 U.S. 600, 614, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974); Clark v. Johnson, 227 F.3d 273, 283 (5th Cir. 2000) ("[T]he Supreme Court has not extended the right of counsel to discretionary review."); State v. Thomas, 750 So.2d 1114, 1127 (La. Ct. App. 1999) (defendant has "a right to court appointed counsel on a first direct appeal as of right"); see also La. Code Crim. P. art. 912.1(B)(1) (providing right of appeal to court of appeal in criminal cases). Thus, Petitioner cannot use this claim as a basis for cause to overcome the procedural default of his claims.

Because Petitioner has failed to make a showing of cause, the procedural default rule applies, without the necessity of considering whether the alleged constitutional error caused actual prejudice. Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986)); Glover v. Hargett, 56 F.3d 682, 684 (5th Cir. 1995). Furthermore, Glover v. Cain, 128 F.3d 900 (5th Cir. 1997) clearly establishes that La. C.Cr.P. art. 930.8

is an independent and adequate state ground for rejecting an application for post-conviction relief.

There is a narrow exception to the "cause" requirement which allows the court to consider a claim otherwise abusive. If the petitioner can demonstrate that the alleged constitutional violation probably has caused the conviction of an innocent person and the failure to entertain the claim would result in "a fundamental miscarriage of justice," the court may consider the claim. Murray v. Carrier, supra. The question whether there has been a miscarriage of justice "is concerned with actual as compared with legal innocence." Sawyer v. Whitley, 505 U.S. 333, 339-342, 112 S.Ct. 2514, 2519-20, 120 L.Ed.2d 269 (1992). "The term 'actual innocence' means factual, as opposed to legal, innocence --'legal innocence', of course, would arise whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence . . . means that the person did not commit the crime." Johnson v. Hargett, 978 F.2d 855, at 859, (5th Cir. 1992). To fall within the actual innocence exception, a habeas petitioner must show that the trier of facts would have entertained a reasonable doubt of his guilt. Kuhlmann v. Wilson, 477 U.S. 436, at 454 n. 17, 106 S.Ct. 2616, at 2627 n. 17. To establish actual innocence, a petitioner must "support his allegations with new, reliable evidence that was not presented at trial and must show that it was more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" Fairman v. Anderson, 188 F.3d 635 (5th Cir. 1999) (citing Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct.851, 130 L.Ed.2d 808 (1995)).

Petitioner has not provided any new and reliable evidence of his innocence. Furthermore, the Louisiana Courts found that the evidence was sufficient to support Petitioner's conviction beyond a reasonable doubt. The Louisiana Second Circuit Court of Appeal found the following:

> As conceded by O'Neal, there is no dispute regarding the fact that he fatally shot Moore. The evidence presented at trial showed that O'Neal confronted Moore while armed with a loaded .45 caliber semiautomatic handgun. The autopsy report reflects that Moore had been shot twice in the back which supports the eyewitnesses who testified that Moore was running away when O'Neal continued to shoot at him. Afterwards, O'Neal went back to his home to reload his gun. O'Neal's statements to police indicated that the reason for the confrontation was to ask Moore to stop mowing what he believed to be his grass. As discussed previously, O'Neal's claim that Moore attacked him with a lawnmower was adequately refuted by the state's evidence, and the jury's verdict indicates that it rejected any claims of self-defense. Mere words are insufficient to establish provocation that would reduce second degree murder to manslaughter. Further, we are confident that a reasonable person would not lose his cool and kill over whether a neighbor mowed a small area of his lawn. O'Neal did not meet his burden of proving that he killed Moore while acting in "sudden passion" or "heat of blood," and, thus, he was not entitled to a verdict of manslaughter. This argument is therefore without merit.

State v. O'Neal, 43,055 (La.App. 2 Cir. 2/13/08); 976 So.2d 297. Thus, the evidence of Petitioner's guilt is overwhelming.

Accordingly;

**IT IS RECOMMENDED** that Petitioner's application for habeas corpus relief be **DENIED**, and that this action be **DISMISSED WITH PREJUDICE**.

### OBJECTIONS

Under the provisions of 28 U.S.C. 636(b)(1)(c) and Fed. R. Civ. Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Civ. Proc. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within fourteen (14) days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a COA when it enters a final order adverse to the applicant. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 120 S.Ct. 1595, 1604 (2000). A party may, within fourteen (14) days from the date of this

Report and Recommendation, file a memorandum that sets forth arguments on whether a COA should issue.

**THUS DONE AND SIGNED** in chambers at Shreveport, Louisiana, this 19th day of August, 2021.

Mark L. Hornsby
U.S. Magistrate Judge